UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PENGILLY MASONRY, INC.

        Plaintiff,

    v.

ASPEN INSURANCE UK LIMITED,

        Defendant.

NO. CIV. S-09-802 FCD/EFB

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    This is an action to collect on a judgment entered against defendant Aspen Insurance UK Limited's ("Aspen") insured, plaintiff Pengilly Masonry, Inc. ("Pengilly"), after Aspen failed to defend Pengilly in an underlying action for damages arising out of allegedly defective work performed by Pengilly at a public works project in Hayward, California.  Ultimately, Pengilly entered into a settlement with the claimant, Mitchell Engineering ("Mitchell"), by which Pengilly agreed that it would not appear and contest the matter at trial in exchange for a covenant not to execute on the judgment by Mitchell.

1

Since this matter was filed, Aspen has admitted it had a duty to defend Pengilly in that action and has agreed to pay Pengilly's reasonable and necessary defense costs incurred following tender of defense. By way of this motion, Pengilly seeks a declaration that the judgment entered against it is covered under its policy with Aspen, and that Aspen is liable for the amount of the judgment as damages for its breach of the duty to defend under the subject policy. Plaintiff's complaint alleges four causes of action: (1) declaratory relief on the duty to defend; (2) declaratory relief on the duty to indemnify; (3) breach of contract; and (4) breach of the covenant of good faith and fair dealing (or insurance "bad faith" claim). (Compl., filed Mar. 23, 2009.) At issue here are the second and third claims.

Although Aspen does not dispute that Mitchell's claim against Pengilly was covered by the subject policy and it thus had a duty to defend Pengilly, it opposes the instant motion, arguing that Pengilly is not entitled to partial summary judgment on its second and third causes of action because the underlying default judgment entered against Pengilly is void as either (1) procedurally defective or (2) because it was the product of fraud or collusion by Pengilly and Mitchell and did not otherwise represent a reasonable resolution of Mitchell's cross-complaint.

For the reasons set forth below, the court GRANTS Pengilly's motion as to its second and third causes of action.[1]  The

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

judgment entered in the underlying action is a valid judgment, procedurally and substantively, covering a claim within the coverage of Pengilly's policy, and thus, Aspen has a duty to indemnify Pengilly against the judgment. As a consequence of Aspen's admitted breach of contract in failing to defend its insured, Pengilly has been damaged in the amount of the judgment entered against it in the underlying action--$384,958.62.

**BACKGROUND[2]**

**A.   The Policy**

Between February 28, 2006 and February 28, 2007, Aspen insured Pengilly under a general liability policy. (Defs.' Opp'n to Pl.'s Stmt. of Undisputed Facts ("SUF"), filed Oct. 13, 2009 [Docket #20], ¶ 1.) The policy states "we (Aspen) will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (SUF ¶ 2.) The policy defines property damage as physical injury to tangible property, including all resulting loss of use of that property. However, the policy excludes property damage to that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. (Id.)

---

[2] Except as otherwise noted, the facts recited below are undisputed and/or the parties' dispute with regard to the fact is not material, and thus, the court treats the fact as undisputed.

3

### B. Underlying Action

On June 13, 2007, Pengilly, as a subcontractor of Mitchell, filed suit in the Alameda Superior Court against Arch Insurance Company, Arch Reinsurance Company, Mitchell, the City of Hayward, and others for damages arising out of work on a construction project for the City of Hayward. (SUF ¶ 3.) Pengilly sought damages in the amount of $119,521.70, plus penalties, interest, and attorneys' fees. (Pl.'s Reply to Defs.' Stmt. of Disputed Facts ("DDF"), filed Oct. 27, 2009 [Docket # 27], ¶ 1.)[3]

On or about August 13, 2007, Mitchell filed a cross-complaint against, among others, Pengilly, seeking to recover for property damage allegedly caused by Pengilly's negligent, unworkmanlike, and improper construction which damaged other work previously installed by Mitchell and others, thereby requiring subsequent repair and replacement. (SUF ¶ 4.) On October 17, 2007, the court in the underlying action sustained Pengilly's demurrer to Mitchell's cross-complaint based upon Mitchell's failure to comply with California Code of Civil Procedure § 425.10(a)(2), which requires the amount demanded in the cross-complaint to be specifically stated. Mitchell was granted leave to amend the cross-complaint to state a specific damages request. (DDF ¶ 2.)

On or about October 31, 2007, Mitchell filed a first amended cross-complaint against Pengilly and others which asserted causes of action for breach of contract, breach of the covenant of good

---

[3] Although Aspen set forth various alleged, additional disputed facts in its statement, in large part and as they pertain to the motion, the additional facts are not disputed by Pengilly.

4

faith and fair dealing, and action on contractor's license bond. (SUF ¶ 5.) Similar to the original cross-complaint, the amended cross-complaint sought to recover for property damage allegedly resulting from Pengilly's negligent, unworkmanlike, and improper construction, causing Mitchell to suffer injury and damage in the specified sum of $120,000.00. (Id.) Pengilly thereafter filed an answer to Mitchell's first amended cross-complaint. (SUF ¶ 6.)

On November 1, 2007, Pengilly served Mitchell a Demand for Bill of Particulars. (SUF ¶ 7.) After receiving no response, on or about June 6, 2008 Pengilly moved to compel Mitchell to serve a supplemental Bill of Particulars pursuant to California Code of Civil Procedure § 454. (SUF ¶ 7.) On or about July 8, 2008, Mitchell responded to Pengilly's demand for a Bill of Particulars by serving a Statement of Damages specifying total contract damages in the amount of $262,893.93. (DDF ¶ 3.) On July 16, 2008, the court granted Pengilly's motion to compel, requiring Mitchell to serve a supplemental Bill of Particulars, but at no time thereafter did Mitchell serve a supplemental Bill of Particulars, nor was a subsequent motion to compel filed by Pengilly after receiving Mitchell's Statement of Damages. (DDF ¶ 3.)

Although Mitchell's original cross-complaint was filed on August 13, 2007, Pengilly did not tender the cross-complaint to Aspen for defense until December 15, 2008. (DDF ¶ 4.) At the time Aspen received notice of the cross-complaint, the matter was scheduled for trial on January 26, 2009. (DDF ¶ 5.) Initially, Apsen denied coverage based on the apparent absence of any covered claim in the first amended cross-complaint. Pengilly

5

then forwarded the original cross-complaint to Aspen for review on January 14, 2009. (DDF ¶ 6.) On January 21, 2009, counsel for Pengilly sent an e-mail to Greg Irons, a claims handler for Aspen, which advised Mr. Irons that Aspen's refusal to defend Pengilly in the underlying action was wrongful under California law. Pengilly's counsel informed Apsen that Pengilly was not in a position to pay the anticipated attorneys' fees, expert fees, and court costs associated with defending against Mitchell's cross-complaint, which counsel claimed then sought damages in excess of $600,000.00. (SUF ¶ 12.) Counsel warned Aspen that Pengilly would likely allow its default to be taken, and that thereafter, Pengilly would "take appropriate action to protect itself from this breach of the most important part of a liability insurance policy--the duty to defend--and seek to hold Aspen liable for all consequential damages, including defense costs and any judgment entered." (Id.) Throughout the course of the correspondence, Pengilly's counsel acknowledged that the amended cross-complaint was silent on issues pertinent to coverage, but asserted that the original cross-complaint contained allegations sufficient to trigger coverage because it indicated property damage to others' work. (DDF ¶ 7.)

By email dated January 23, 2009, Aspen took the position that the first amended cross-complaint was the operative pleading and that there were no allegations in that pleading which afforded coverage. Aspen also noted that Pengilly's late reporting of the claim was a matter of serious concern, and that "had Pengilly reported this claim when the cross-complaint was originally filed back in August 2007--the insured would be in a

much different position." (DDF ¶ 8.)  Aspen refused to defend Pengilly.  (SUF ¶ 13.)

### C. Settlement and Default Judgment

On or about January 26, 2009, the day the matter was set for trial, Pengilly and Mitchell entered into a settlement agreement. The terms of the agreement provided that Mitchell would pay Pengilly $90,000.00 on Pengilly's complaint and in exchange, Pengilly would dismiss its complaint against Mitchell and not contest Mitchell's cross-complaint against it, provided Mitchell sign a covenant not to execute on the judgment entered against Pengilly.  (SUF ¶ 14.)  Mitchell thereafter signed said covenant which provided that in the event Mitchell obtained a judgment against Pengilly, Mitchell agreed not to collect any sums on the judgment from Pengilly or its insurance carriers.  (Id.)  The covenant also contained a provision which assigned Mitchell's rights under California Insurance Code § 11580 *et seq*. to recover from Pengilly's insurer for any claims for property damage and resulting economic loss caused by Pengilly.  (Id.)  The essential terms of the settlement between the parties were put on the record.  The court then entered a default on the amended cross-complaint against Pengilly and scheduled a prove-up hearing for February 23, 2009.  (SUF ¶ 15.)  The prove-up hearing date was continued to March 9, 2009 and at that time, based upon the documentary evidence submitted by counsel for Mitchell, including the declaration of Mitchell's project manager, Paddy White, and Mitchell's Statement of Damages, the court adopted the proposed Statement of Decision that had been prepared by Mitchell's counsel.  The court then entered judgment on the cross-complaint

7

in the sum of $262,893.93 plus attorneys' fees in the sum of $122,064.69, comprising the net total judgment of $384,958.62. (Id.)

### STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

1 Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita
2 Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587
3 (1986)).  The evidence presented by the parties must be
4 admissible.  Fed. R. Civ. P. 56(e).  Conclusory, speculative
5 testimony in affidavits and moving papers is insufficient to
6 raise genuine issues of fact and defeat summary judgment.  See
7 Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d
8 49, 57 (2d Cir. 1985); Thornhill Publ'g Co., Inc. v. GTE Corp.,
9 594 F.2d 730, 738 (9th Cir. 1979).

10    Once the moving party has met its burden of proof, the
11 nonmoving party must produce evidence on which a reasonable trier
12 of fact could find in its favor viewing the record as a whole in
13 light of the evidentiary burden the law places on that party.
14 See Triton Energy Corp. V. Square D Co.,686 F. 3d 1216, 1221 (9th
15 Cir. 1995).  The nonmoving party cannot simply rest on its
16 allegations without any significant probative evidence tending to
17 support its allegations.  See Nissan Fire & Marine, 210 F.3d at
18 1107.  Instead, through admissible evidence the nonmoving party
19 "must set forth specific facts showing that there is a genuine
20 issue for trial."  Fed. R. Civ. P. 56(e).

**ANALYSIS**

22    While Aspen now concedes it had a duty to defend Pengilly in
23 the underlying action (SUF ¶ 16; DDF ¶ 15)[4], it nonetheless
24 opposes the instant motion, arguing the judgment entered against
25 Pengilly is void as procedurally defective and/or because it was

---

[4] Aspen has paid Pengilly $40,231.00, representing the attorneys' fees Pengilly incurred in prosecuting its complaint against Mitchell and defending Mitchell's cross-complaint.

9

the product of fraud or collusion by Pengilly and Mitchell and it did not otherwise represent a reasonable resolution of Mitchell's cross-complaint.  First, Aspen argues the judgment is procedurally defective and, thus, void because the court entered default judgment against Pengilly without striking Pengilly's answer to the cross-complaint.  Second, Aspen argues the amount of the default judgment exceeded the amount demanded in Mitchell's first amended cross-complaint, and therefore, the judgment violates California Code of Civil Procedure § 580, which provides that relief granted to a plaintiff, on a default judgment, cannot exceed the amount demanded in the complaint. Finally, Aspen argues that even if the default judgment was procedurally valid, it may be deemed substantively void because it was the product of fraud or collusion by Pengilly and Mitchell, and/or it did not otherwise represent a reasonable resolution of Mitchell's cross-complaint.

### 1. **Pengilly's Answer**

Aspen's first argument, challenging the propriety of the default judgment, is baseless.  Contrary to Aspen's argument that Pengilly's answer was not stricken by the trial court, the "Judgment," issued on March 9, 2009, states in pertinent part:

> The cross-complaint filed by MITCHELL ENGINEERING, INC. was tried as an uncontested matter by the court sitting without a jury, following *the striking of PENGILLY MASONRY, INC.'S answer* and entry of its default.

(Alameda Superior Ct. J., filed March 9, 2009, Ex. E to Compl.)(Emphasis added.)  Thus, Pengilly's answer does not preclude this court from validating the judgment.  The answer was properly stricken by the state court in entering Pengilly's

10

default.[5]

### 2. **<u>Amount of the Judgment</u>**

Aspen alternatively argues the judgment is void, as procedurally defective, because it exceeded the amount requested in the first amended cross-complaint, and Mitchell's Statement of Damages, provided in response to Pengilly's Demand for Bill of Particulars, cannot constitute an amendment to the cross-complaint. Mitchell's amended cross-complaint sought damages in the amount of $120,000.00, but the court ultimately awarded Mitchell $262,893.93, after considering Mitchell's proffer at the prove-up hearing, which included its Statement of Damages. Aspen argues that this violated California Code of Civil Procedure § 580(a) which provides in pertinent part:

> the relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint[.]

Pengilly asserts, to the contrary, that the Statement of Damages satisfies Section 580(a) because it sufficiently apprised Pengilly of the itemized damages emanating from its alleged wrongdoing, and thus, the court appropriately considered the amount specified in the Statement when it entered the default judgment.

---

[5] In its reply, Pengilly argues Aspen lacks standing to challenge the validity of the default judgment, having refused to defend Pengilly in that action. Pengilly contends that as a non-party to the underlying action, Aspen cannot now contest the validity of the judgment. Pengilly also alternatively argues that this court lacks authority to invalidate the state court's judgment pursuant to the "<u>Rooker-Feldman</u>" doctrine. The court does not reach these arguments since even assuming such authority and Aspen's standing to raise these arguments, Aspen still cannot prevail on the motion.

11

The court need not resolve the parties' dispute over whether the Statement of Damages in this case amended the cross-complaint for purposes of Section 580(a) because Aspen's reliance on the first clause of Section 580(a), set forth above, is inapposite. Section 580(a)'s first clause applies in a case where "*no answer is filed.*" In this case, Pengilly answered Mitchell's cross-complaint; its answer was only stricken pursuant to its settlement agreement with Mitchell. As such, this case falls within the second clause of Section 580(a), which provides: "in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue." Thus, under this provision, the judgment entered here did not violate Section 580(a) since the trial court was free to grant Mitchell "any relief" consistent with the complaint.

While Aspen cites cases[6] where courts have applied Section 580(a)'s requirement that a judgment not exceed the damages requested by the complaint to circumstances where an answer is stricken for discovery violations and default entered as a sanction, Aspen fails to cite any case, nor is the court aware of any, where a court has applied Section 580(a)'s first clause to the circumstance where a party knowingly allows its default to be taken (and answer stricken) pursuant to a settlement agreement. This latter circumstance is more akin to a contested matter than a traditional default case where a party fails to answer. See

---

[6] Electronic Funds Solutions, Inc. v. Murphy, 134 Cal. App. 4th 1161 (2005); Greenup v. Rodman, 42 Cal. 3d 822, 832 (1986).

12

Greenup, 42 Cal. 3d 832 (recognizing that the first clause of Section 580 addresses the traditional default context where a defendant has failed to answer, while the second clause of Section 580 refers to contested cases).

Section 580 was enacted to ensure that a defendant who declines to contest an action does not suffer open-ended liability; thus, the statute requires the plaintiff to provide notice, via his complaint, of the maximum amount of the defendant's potential liability. Electronic Funds, 134 Cal. App. 4th at 1173-74. These principles, however, are inapplicable in a case such as this one where the defendant (Pengilly) answered the cross-complaint and contested the matter up until the day of trial. Pengilly's default was entered knowingly, on terms it fully agreed to as part of its settlement with Mitchell. The settlement was made on the record and judgment was entered against Pengilly after a prove-up hearing establishing the amount of Mitchell's damages. (SUF ¶s 14-15.) Indeed, the court's Statement of Decision, following the prove-up hearing, recounts that Pengilly accepts that the amount of damages at issue are those set forth in Mitchell's Statement of Damages. (Stmt. of Decision, filed Mar. 9, 2009, at Ex. D to Compl.) Under these circumstances, there is no concern that Pengilly faced open-ended liability; here, the defendant, Pengilly, specifically agreed to the amount of damages awarded.

Morever, Aspen cannot now complain of a lack of notice of the amount of damages at issue, as it is undisputed that Pengilly informed Aspen in January 2009 of the full extent of Mitchell's claimed damages. (SUF ¶ 12.)

13

Thus, for all of the above reasons, Aspen cannot challenge the propriety of the judgment based on the amount awarded by the trial court. Said award comported with the statutory requirements under California law.

### 3. **Absence of Evidence of Fraud or Collusion**

Even an insurer who has breached the duty to defend has the right to collaterally attack a default judgment that is the product of fraud or collusion. Amato v. Mercury Casualty Co., 53 Cal. App. 4th 825 (1997). In Amato, the carrier declined its insured's defense. Because Amato could not afford to mount a defense at his own expense, he suffered a default judgment after having entered into an agreement with the plaintiff in the underlying suit to permit the default to be entered in exchange for the plaintiff's commitment to not seek collection from Amato. Id. at 831, 835. The court held the default judgment raised a presumption in favor of the insured, but that the insurer would not be bound by the judgment if it could show, by a preponderance of the evidence, that the settlement was the product of fraud or collusion or did not represent a reasonable resolution of the claim. Id.

Here, Aspen contends that the settlement agreement entered into between Pengilly and Mitchell was collusive because through the agreement Pengilly attempted to artificially increase the damages flowing from Aspen's breach. Aspen argues that Mitchell would have been willing to dismiss its cross-complaint without any payment at all from Pengilly. Aspen further asserts that Pengilly convinced Mitchell to enter into the covenant not to execute in order to create a fictitious liability in favor of

14

Mitchell before having Mitchell assign any claim against Aspen to Pengilly. These "conclusory allegations of collusion, without factual support," however, "are insufficient to defeat summary judgment." National Steel Corporation v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1995)(citing Zander v. Texaco, Inc., 259 Cal. App. 2d 793, 804 (1968)). Aspen fails to provide any evidence to support the assertion that Mitchell would have been willing to completely dismiss its cross-complaint in exchange *only* for a reduced judgment on Pengilly's complaint or that Pengilly did not face a real risk of liability to Mitchell.

Moreover, contrary to Aspen's contention that the covenant not to execute in this case evidences collusion, "California courts have [consistently] held that a reasonable stipulated judgment, given in exchange for a covenant not to execute, is presumptive evidence of liability." Id. at 501 (citing Pruyn v. Agriculatural Ins. Co., 36 Cal. App. 4th 500, 509 (1995)). Courts recognize that a covenant not to execute is not the same as a release as it may have adverse effects for the insured, including impairment of future credit. See e.g. Critz v. Farmers, Ins. Grp., 230 Cal. App. 2d 788, 803 (1964). It is thus settled under California law that "where the insurer has repudiated its obligation to defend [its insured,] in the absence of fraud[,] [the insured] may, without forfeiture of his right to indemnity, settle with the plaintiff upon the best terms possible, taking a covenant not to execute." Zander, 259 Cal. App. 2d at 803. Absent evidence of fraud, Pengilly had the right to enter into a covenant not to execute with Mitchell as part of an attempt to secure the best settlement terms possible.

15

Aspen asserts that even if Pengilly had the right to seek out the best settlement terms possible through a covenant not to execute, the agreement reached with Mitchell was nonetheless a product of collusion as a matter of law. A cognizable claim of collusion requires evidence that the injured party had no substantial claim or chance of recovery and that the parties permitted a judgment in the injured party's favor that was disproportionate to the injuries. Zander, 259 Cal. App. 2d at 804. Aspen bears the burden of making this showing by substantial evidence. "If the insurer is unable to meet [this] burden of proof then the . . . judgment will be binding on the insurer." Pruyn, 36 Cal. App. 4th at 509.

In this case, Aspen has not provided evidence to demonstrate that Mitchell had no chance of recovery on its cross-complaint against Pengilly or that the judgment in Mitchell's favor was disproportionate to its injuries. Zander, 259 Cal. App. 2d at 806-07 (upholding trial court's judgment rejecting claim of collusion where there was no evidence that the injured party did not have a substantial chance of recovery or that the judgment was disproportionate to the claimed injuries). Indeed, the evidence submitted on the motion establishes that Pengilly faced significant exposure on Mitchell's cross-complaint. (Slome Decl., filed Oct. 13, 2009, Ex. E at 95:5-12.)[7]

Moreover, the terms of the settlement were placed on the record before the trial court. Subsequently, the court considered the evidence in support of Mitchell's claim against

---

[7] Aspen did not submit any evidence to the contrary.

16

Pengilly during the prove-up hearing and ultimately approved entry of default judgment on the terms requested by Mitchell. The trial court's adjudication of the issues of liability and damages, rather than the parties' simple agreement thereto, further supports a finding that the judgment was not a product of fraud or collusion. See National Union Fire Ins. Co. v. Lynette C., 27 Cal. App. 4th 1434, 1449 (1994) (finding no collusion where an insured agreed to not contest the plaintiff's claim in exchange for a covenant not to execute because the judgment was entered by the court after an uncontested trial where the court made an "independent adjudication of the facts based on an evidentiary showing"). Such was similarly the case here. Because this case involved "significant independent adjudicatory action by the [trial] court," this court cannot find collusion. Id. (recognizing that a "default prove up proceeding preserve[s] a semblance of independent adjudication under court supervision" which is not present in the context of a stipulated judgment between parties); see also Pruyn, 36 Cal. App. 4th at 516-17 (finding that the circumstances of a default hearing held following a settlement or an uncontested trial where the insured settled with the claimant and thereafter presented no defense, "necessarily involve significant, independent adjudicatory action by the court, thus mitigating the risk of a fraudulent or collusive settlement between the insured and the claimant").

 Finally, not only does Aspen fail to demonstrate that the judgment was entered on terms disproportionate to Mitchell's injuries, it also does not proffer any evidence of deceitful or secret agreements between Pengilly and Mitchell to demonstrate

17

fraud or collusion. See Span, Inc. v. Associated Int'l Ins. Co., 227 Cal. App. 3d 463, 484 (1991) (holding that collusion has been variously defined as, among other things, "a deceitful agreement or compact between two or more persons for the one party to bring an action against [another] for some evil purpose, [so] as to defraud [a] third party of his right[s]"). Here, there are no other agreements between Mitchell and Pengilly, other than the covenant not to execute, and the responsibility of drafting and filing the documents necessary to obtain the judgment were solely Mitchell's and its attorneys' responsibility. (Slome Decl., Ex. A at 64:13-15, 68:9-70:11 and Ex. E at 59:20-60:3, 62:14-20.) Pengilly had no input. Thus, there are no grounds to find collusion by Pengilly and Mitchell in entering the underlying settlement agreement which permitted entry of default judgment against Pengilly.

**4.    Reasonableness of the Settlement Agreement**

Even in the absence of a finding of collusion between Pengilly and Mitchell, Aspen asserts that it should not be liable for the amount of the judgment because Pengilly and Mitchell's settlement agreement was unreasonable. The issue of reasonableness must be considered independently of Aspen's claim of collusion because "proof that the settlement was not collusive obviously would not suffice, in and of itself, to demonstrate that the settlement was reasonable: The concepts overlap but do not coincide." Xebec Development Partners, Ltd. V. National Union Fire Ins. Co., 12 Cal. App. 4th 501, 553 (1993). Like above, however, Aspen must provide *evidence* to support its claim that the settlement agreement was unreasonable.

Aspen contends the settlement was unreasonable because Mitchell agreed to settle the entire suit by paying Pengilly $90,000.00 on Pengilly's complaint and taking nothing on its cross-complaint against Pengilly. Aspen argues the covenant not to execute was entered solely for the purposes of allowing Pengilly to "exploit and profit from [its] coverage denial." However, again, Aspen offers no evidence to support these assertions. Mitchell derived a significant benefit in this case by assigning its rights against Aspen to Pengilly as additional consideration for its settlement of Pengilly's complaint. Pengilly was not willing to settle its case for only $90,000.00 but agreed to do so in exchange for Mitchell's assignment of rights and covenant not to execute. Pengilly's acceptance of these terms was reasonable, considering its insurer's refusal to defend. As set forth above, California law is clear that an insured may protect itself where its insurer breaches its duty to defend by allowing a judgment to be entered against it in exchange for a covenant not to execute. See e.g. Critz, 230 Cal. App. 2d at 801. In the absence of a settlement, the case was prepared to go to trial and Pengilly would have been at risk of suffering a significant judgment against it on the cross-complaint. Instead, it settled the claim against it on the "best possible terms," by accepting less money on its affirmative claim against Mitchell in exchange for the covenant not to execute and assignment of rights by Mitchell. Considering the settlement agreement from either the perspective of Pengilly or Mitchell, the court cannot find it unreasonable.

As its final argument, Aspen maintains that by the settlement agreement, Pengilly is attempting to collect unforeseeable consequential damages from Aspen, as a result of Aspen's breach of the contract. Aspen's argument is wholly unavailing. It is undisputed that Aspen was fully aware of the consequences of its decision to not defend Pengilly. In January 2009, Pengilly informed Aspen of its inability to defend itself and the likely judgment that would be entered against it. Aspen refused to defend Pengilly, and following the prove-up hearing, the trial court entered Pengilly's default on the terms requested by Mitchell. Pengilly informed Aspen of these terms, in advance of the entry of its default, and thus, there can be no dispute that the damages at issue were foreseeable.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for partial summary judgment on its claim for declaratory relief on the duty to indemnify and on its breach of contract claim is GRANTED.

IT IS SO ORDERED.

DATED: November 24, 2009

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE